Alvin Lee HARRISON, Plaintiff,

v.

Douglas DRETKE, George Flowers, Nathaniel Quarterman, Kenneth Bright, Jr., and Alice Benner, Defendants.

Civ. A. No. W–92–CA–113.

United States District Court, W.D. Texas, Waco Division.

Oct. 21, 1994.

---

**386**

Alvin Lee Harrison, pro se.

Mark Kosanovich, Office of Atty. Gen., Austin, TX, for defendants.

### ORDER

WALTER S. SMITH, Jr., District Judge.

### I. STATEMENT OF THE CASE

Plaintiff is an inmate in the Alfred Hughes Unit of the Texas Department of Criminal Justice (TDCJ), Institutional Division. On April 22, 1992, Plaintiff filed a complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Among other things, Plaintiff claimed that Defendants placed him on restraint status and container restriction without due process of law.[1] This Court dismissed Plaintiff's original claims as frivolous on November 23, 1992. The United States

Court of Appeals for the Fifth Circuit remanded the case to this Court on July 15, 1993, for reconsideration of Plaintiff's due process claims regarding container restrictions and restraint status, 998 F.2d 1013. On remand, Defendants have filed a motion for summary judgment and Plaintiff has filed a response.

### II. SUMMARY JUDGMENT

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even assuming the version of the facts which is most favorable to the Plaintiff, Defendants are entitled to judgment as a matter of law, for the reasons described below.

### III. DUE PROCESS CLAIM

This action arises from an incident in which Plaintiff allegedly threw feces and urine on another inmate on July 21, 1991. Three days later, the Hughes Unit classification committee placed Plaintiff on restraint status. Plaintiff claims that he was also placed on container restriction; for summary judgment purposes, we will assume this to be true. In addition, Plaintiff claims that he was not given notice of the restrictions being considered or an opportunity to attend a hearing, present evidence, or review statements against him. For summary judgment purposes, we will assume that Plaintiff's first opportunity to present his view of the alleged incident was August 14, 1991, when he had a regularly scheduled review of his classification status.

Plaintiff contends that the Defendants' course of action violated his right to due process of law under the Fourteenth Amendment to the United States Constitution. According to the U.S. Supreme Court, prisoners retain only a "narrow range of protected

---

1. Inmates on restraint status must wear mechanical restraints whenever they leave their cell; inmates on container restriction are not allowed to keep cups, plates and similar items in their cells.

liberty interests." *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). A number of interests that are more substantial than those the Plaintiff allegedly was denied in this case receive no direct protection from the U.S. Constitution. For example, there is no "constitutional or inherent right" to parole. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). Good-time credits for satisfactory behavior are also not guaranteed by the Constitution. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In the present case, the United States Court of Appeals for the Fifth Circuit has already determined that Plaintiff's interests in having free access to containers and in not being on restraint status do not rise to the level of direct constitutional protection.

■ However, even where there is no direct constitutional right at stake, a state can create liberty interests through its own laws and regulations. *See Wolff v. McDonnell,* 418 U.S. at 557, 94 S.Ct. at 2975; *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871–72 (holding that Pennsylvania's prison regulations created a liberty interest in remaining in the general prison population). Once in place, these liberty interests acquire some protection from the due process clause of the Fourteenth Amendment. In the prisoner context, such liberty interests may arise when a regulatory scheme limits the discretion of prison officials in restraining the freedom of prisoners. *See Hewitt* at 472, 103 S.Ct. at 871–72. If prison officials must use objective criteria and follow mandatory procedures before withdrawing a right or privilege under state regulations, then they may be obligated to provide constitutional due process to the prisoner. *Id.*

■ Plaintiff's first claim regarding restraint status fails because he has not shown the existence of any regulations that limit officials' discretion in imposing restraint status. In fact, the TDCJ Administrative Segregation Plan mandates that prisoners such as Plaintiff who are classified as assaultive

are to be under restraint whenever they are escorted from their cells.[2] Any freedom of movement these inmates have beyond escort under restraint is an unregulated privilege extended by prison officials. Thus, the Constitution mandates no official procedure for withdrawing this privilege.

■ On the other hand, Plaintiff's interest in container access does find protection in state regulations. Under the TDCJ plan, prisoners in administrative segregation retain the same general property rights as those in the general prison population. Officials can deny only those items which represent a threat to the security of guards, other inmates or the prisoner himself; and this must be done on a case-by-case basis through a decision by the unit classification committee. Although this scheme creates objective criteria for restricting property rights, the procedural requirement of a decision by the classification committee is much less detailed than the procedures mandated by the regulations in *Hewitt. See Id.* at 470–71 n. 6, 103 S.Ct. at 871 n. 6. The Supreme Court has held that "simple procedural guidelines," without more, do not invoke the due process standards of the Fourteenth Amendment. *Id.* at 471, 103 S.Ct. at 871. However, since the TDCJ guidelines have some of the mandatory language relied on in *Hewitt,* we will analyze the procedure by which Plaintiff was placed on container restriction under the constitutional standards established by the Supreme Court.

■ The remaining summary judgment issue is neither the correctness of the classification committee's decision to deny container privileges nor whether the committee precisely followed the TDCJ's own procedural guidelines. The pertinent question is whether Plaintiff was given constitutional due process. The extent of the process due depends upon the importance of the private interest at risk of deprivation, balanced against the value of additional procedural requirements and the governmental interest involved. *Hewitt* at 473, 103 S.Ct. at 872; *see also*

---

2. Plaintiff's motion for summary judgment indicates that he is classified as Group A, or assaultive. Even if Plaintiff were classified as nonas-saultive in Group B, the result would be the same because of the similarity of the regulations for both groups.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The Court in *Hewitt,* applying this balancing test, determined that transferring inmates from the general prison population to administrative segregation requires an informal, nonadversary evidentiary review. *Hewitt* at 476, 103 S.Ct. at 874. An inmate must receive some notice of the charges against him and have an opportunity to present his views, at least in written form, to the prison official charged with making the decision. *Id.* A key point for the present case is that the evidentiary review does not have to take place before an inmate's liberty is restricted. In *Hewitt,* the inmate was immediately transferred to administrative segregation after a prison riot. It was not until five days later that a committee met to conduct an evidentiary review and decided that he should remain in administrative segregation. *Id.* at 477, 103 S.Ct. at 874.

Under the balancing test, the same procedural standards in *Hewitt* would not necessarily be required for every curtailment of a state-created liberty interest. *See Wolff,* 418 U.S. at 572 n. 19, 94 S.Ct. at 2892 n. 19. It would follow from *Hewitt* that a less severe deprivation would require less procedural protection than the particular *Hewitt* standards provide. We may safely conclude that the initial placement in administrative segregation is a much greater restriction on freedom than imposing container restrictions on an inmate who is already in administrative segregation. Nevertheless, the procedural protections that the present Plaintiff received were similar to those in *Hewitt.* The Hughes Unit classification committee reviewed Plaintiff's status a little more than three weeks after placing him on container restriction and, presumably, decided to continue the restrictions. This review was one of Plaintiff's regularly scheduled classification hearings which must be held every 90 days pursuant to the TDCJ Administrative Segregation Plan. Under the plan, inmates have the right to notice of the hearing at least twenty-four hours beforehand, the right to attend the hearing, to make a statement, to submit written statements from witnesses and to submit other documentary evidence. The committee then decides whether the inmate should remain in segregation and whether to change any restrictions that he might have. The committee must provide the inmate with a written explanation of its decision.

There is little room to criticize the form of this review process. Rights such as attending the hearing and submitting written statements from other witnesses are even greater than the *Hewitt* standards. As for the timing, it would be possible to have more frequent regular review or mandatory review either before or immediately following every restriction of a right. Such a policy would have the effect of more quickly restoring rights if it were determined that they were wrongly denied. Each additional hearing, however, consumes the resources and time of the prison administration. *See Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903 (holding that fiscal and administrative burden is a factor in the due process balancing test). With regard to such a minor privilege as free access to containers, any benefit that could be provided by additional evidentiary hearings would be outweighed by the cost.

The Supreme Court has stated that prison administration is "at best an extraordinarily difficult undertaking." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Comparing the interests of the Hughes Unit administrators and Plaintiff's claimed liberty interest, this Court holds that the regular classification review process under the TDCJ plan serves as adequate procedural protection of any liberty interest that Plaintiff may have in container access. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.** It is further

**ORDERED** that any motions not previously ruled upon by the Court are **DENIED.**

*JUDGMENT*

In accordance with the Order issued this date, the Court enters its Judgment as follows:

**IT IS ORDERED, ADJUDGED and DE-CREED** that Defendants' Motion for Summary Judgment is **GRANTED** and that Plaintiff take nothing in his claims against Defendants.